**FILED**

**AUG 2 6 2008**

Clerk, U.S. District and
Bankruptcy Courts

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>555 Fourth St., N.W.<br>Washington, D.C.  20530, | ) ) ) ) | Civil Action No.: |
| Plaintiff, | ) ) | |
| v. | ) ) | Case: 1:08-cv-01476 |
| ONE BOX AND PLASTIC BAGS<br>CONTAINING ABOUT $1.2 MILLION<br>IN MUTILATED U.S. CURRENCY, | ) ) ) ) | Assigned To : Bates, John D.<br>Assign. Date : 8/26/2008<br>Description: General Civil |
| and | ) ) ) | |
| ONE SUITCASE CONTAINING<br>ABOUT $5.2 MILLION<br>IN MUTILATED U.S. CURRENCY, | ) ) ) ) | |
| Defendants. | ) ) ) | |

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

*COMES NOW*, plaintiff United States of America, by and through its attorney, the United

States Attorney for the District of Columbia, to bring this verified complaint for forfeiture in a civil

action *in rem* against the defendant properties, which are two different, distinct quantities of

mutilated U.S. currency. Federal law enforcement agents separately seized the properties, pursuant

to judicial warrants issued in May and June 2008, in Washington, D.C.  In support of this cause,

plaintiff states as follows:

### NATURE OF THE ACTION AND DEFENDANTS *IN REM*

1.      This is a civil action *in rem* for the forfeiture of the defendant properties to plaintiff's

use and benefit. Federal agents separately seized the two amounts of mutilated currency from a vault

at the U.S. Treasury Department's Bureau of Engraving and Printing (also called "BEP" in this

complaint) in southwest Washington, D.C., on May 22, 2008, and June 19, 2008, pursuant to warrants issued by the U.S. District Court for the District of Columbia. Plaintiff brings this action pursuant to Title 18, United States Code, Section 981(a)(1)(A), and Title 31, United States Code, Sections 5317(c)(2) and 5332(c).

2.       Section 981(a)(1)(A) declares to be subject to forfeiture to the United States any "property, real or personal, involved in a transaction or attempted transaction in violation" of 18 U.S.C. §§ 1956 or 1960 "or any property traceable to such property." Section 1956 makes laundering of monetary instruments a criminal offense, and § 1956(h) states the criminal penalties for conspiring to launder monetary instruments unlawfully. Section 1960 prohibits operating unlicensed money-transmitting businesses.

3.       Further, 31 U.S.C. § 5317(c)(2) states that any "property involved in a violation" of 31 U.S.C. §§ 5316 or 5324, "or a conspiracy to commit such a violation, and any property traceable to such violation or conspiracy, may be seized and forfeited to the United States . . . ." Section 5316 requires certain reports to be made when monetary instruments are imported or exported, and § 5324(c) proscribes filing or causing or attempting to cause a person to file a report required under 31 U.S.C. § 5316 that contains a material omission or misstatement of fact. The report required by § 5316 is known as a "Report of International Transportation of Currency or Monetary Instruments" and is commonly called either a "CMIR" or a "FinCEN Form 105" in this complaint.

4.       Additionally, 31 U.S.C. § 5332(c) states that any "property involved in a violation" of 31 U.S.C. § 5332(a), which prohibits bulk cash smuggling into or out of the United States, "or a conspiracy to commit such a violation, and any property traceable to such violation or conspiracy, may be seized and forfeited to the United States."

-2-

5.      The defendant properties are more fully described as:

(A)  **One box and plastic bags containing about $1.2 million in mutilated U.S. currency, which was seized on May 22, 2008, from a vault in the Examining and Redemption Section of the U.S. Bureau of Engraving and Printing (BEP), at 14th & C Streets, S.W., Washington, D.C., pursuant to a warrant issued by the U.S. District Court for the District of Columbia in Case 1:08-mj-00327-AK; and,**

(B)  **One suitcase containing about $5.2 million in mutilated U.S. currency, which was seized on June 19, 2008, from a vault in the Examining and Redemption Section of the U.S. Bureau of Engraving and Printing (BEP), at 14th & C Streets, S.W., Washington, D.C., pursuant to a warrant issued by the U.S. District Court for the District of Columbia in Case 1:08-mj-00378-JMF.**

The defendant properties are in BEP's custody in Washington, D.C.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction of this civil action by virtue of 28 U.S.C. § 1345, because it has been commenced by the United States, and by virtue of 28 U.S.C. § 1355(a), because it is an action for the recovery and enforcement of a forfeiture under an Act of Congress. Venue is proper in this District by virtue of 28 U.S.C. § 1355(b)(1), because this is a forfeiture action or proceeding brought in the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred, and by virtue of 28 U.S.C. § 1395, because a civil proceeding for the forfeiture of property may be prosecuted in the district in which the property is found. The defendant properties are now, and during the pendency of this action will be, in the jurisdiction of this Court.

7.      This civil action *in rem* for forfeiture is governed by 18 U.S.C. §§ 981 and 983, the Federal Rules of Civil Procedure, and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, particularly Rule G.

## STATEMENT OF FACTS

8.      The Bureau of Engraving and Printing (BEP) is part of the U.S. Treasury Department.

By law, BEP conducts a program to redeem "mutilated" U.S. currency, taking in damaged cash and replacing it with fresh money from government funds. According to an official BEP report:

> Mutilated currency is defined as currency notes which are either not clearly more than 50% of the original note or in a condition that the value is questionable and therefore special examination is required to determine the value. Mutilation can occur through interactions with fire, water, chemicals, and animals . . . . Badly soiled, limp, defaced, torn, or worn notes that are clearly more than 50% of the original note and do not require special examination are not considered mutilated currency and can be redeemed at any bank. [BEP] is allowed, under regulations by the Department of the Treasury, to exchange mutilated currency at face value . . . . Mutilated currency may be mailed or brought personally to the BEP with a letter stating the estimated value and the explanation of how the currency became mutilated.

9.      Since September 2005, a group of persons have been working together to redeem or exchange about $10-$20 million in mutilated U.S. currency. Members of the group have said that the money was buried in Mexico for 20 or more years and have tried to redeem or exchange batches of the mutilated currency at least six times, both through BEP in Washington, D.C., and at various banks in El Paso, Texas.

10.     Members of this group included Mr. Franz C. Felhaber, Mr. Jose Carillo-Valles, Mrs. Esther Carillo-Valles Saenz-Pardo, and Ms. Xochitl Carillo-Valles (these persons also are called "the Felhaber/Carillo-Valles's," "the Felhaber/Carillo-Valles family" or "the group" in this complaint). These persons all are related by blood or marriage.

11.     Mr. Franz C. Felhaber owns a customs import brokerage business in El Paso, Texas. (This person also is called "Mr. Felhaber" in this complaint.) Mr. Jose Carillo-Valles works for Mr. Felhaber in this customs import brokerage business. (This person also is called "Mr. Carillo-Valles" in this complaint.) Mr. Carillo-Valles is Mr. Felhaber's uncle.

12.     Mr. Carillo-Valles has used or been known or called by variations of this name, such

-4-

as Jose Carillo and Jose C. Valles. His wife, Mrs. Esther Carillo-Valles, has a previous family name of Saenz-Pardo or Saenzpardo. (This person also is called "Mrs. Carillo-Valles Saenz-Pardo" or "Mrs. Esther Carillo-Valles Saenz-Pardo" in this complaint.)

13.    Ms. Xochitl Carillo-Valles is a relative of Mr. Carillo-Valles. (This person also is called "Ms. Carillo-Valles" in this complaint.)

A. *$120,000 exchanged in August 2005*:

14.    In late August 2005, Mr. Felhaber met with an officer of the Federal Reserve Bank in El Paso, Texas. Mr. Felhaber told the bank official that he was a customs broker and had come to the bank to help clients exchange damaged currency.

15.    Mr. Felhaber told the bank official that Mr. Carillo-Valles and Mrs. Carillo-Valles Saenz-Pardo had found buried money on their property in Juarez, Chihuahua, Mexico.

16.    The bank official instructed Mr. Felhaber to contact the Federal Reserve Bank in Washington, D.C., about the damaged currency.

17.    On or about August 29, 2005, Mr. Franz Felhaber, Mr. Jose Carillo-Valles, and Mrs. Esther Carillo-Valles Saenz-Pardo returned to the Federal Reserve Bank branch in El Paso with $120,000 in mutilated currency. The Felhaber/Carillo-Valles family met with a different bank employee than the one with whom Mr. Felhaber had spoken earlier about exchanging mutilated currency.

18.    At the meeting on or about August 29, 2005, at the El Paso Federal Reserve Bank branch office, Mr. Felhaber stated that during his meeting with the previous bank employee, that employee had agreed to exchange the currency.

19.    During the meeting, the group produced $120,000 in mutilated currency which was

in Mrs. Carillo-Valles Saenz-Pardo's purse.

20.     One of the Falhaber/Carillo-Valles's told the bank employee that the money had been found while digging on their property in Juarez, Mexico.

21.     One of the Felhaber/Carillo-Valles's added that they had found millions of dollars.

22.     In fear that the group might be robbed, the El Paso Federal Reserve Bank branch employee decided to accept the $120,000 in mutilated currency, and the bank redeemed the mutilated currency for $120,000 in replacement funds.

23.     The Federal Reserve Bank sent $120,000 in replacement funds by wire transfer into an account in the names of Mr. Jose Carillo-Valles and Mrs. Esther Carillo-Valles Saenz-Pardo at a branch of Bank of America in El Paso, Texas.

24.     Shortly after the replacement funds were deposited into the Bank of America account in the name of Mr. Carillo-Valles and his wife, funds from this account were transferred to a person with the name of Noe Ramos Saenz-Pardo, a person who is not Mrs. Esther Carillo-Valles Saenz-Pardo.

B.  *Attempt to exchange currency through Bank of America in September 2005:*

25.     In September 2005, Mr. Franz Felhaber, Mr. Jose Carillo-Valles, and Mrs. Esther Carillo-Valles Saenz-Pardo went to an El Paso branch of the Bank of America to exchange more damaged currency.

26.     Mr. Felhaber told the bank employee that he was helping Mr. Carillo-Valles and Mrs. Carillo-Valles Saenz-Pardo as an after-hours favor.

27.     Mr. Felhaber told the bank employee that there was several million dollars in mutilated money in Mexico that he wanted to exchange.

28.    Mr. Felhaber was persistent about exchanging the currency and suggested that the bank hire an armored truck to get the money at the Mexican border.

C.  *Attempt to exchange $10,000 through Bank of the West in September 2005:*

29.    On September 12, 2005 and September 15, 2005, a man who identified himself as "Ken Motley" telephoned the Bank of the West in El Paso, Texas.

30.    In one of the telephone calls, Mr. "Motley" told the bank employee that he had $20 million in damaged U.S. currency that he wanted to exchange.

31.    In one of the phone calls, Mr. Motley spoke with a Spanish accent.  In one of the phone calls, Mr. Motley did not speak with a Spanish accent.

32.    In early September 2005, Mr. Franz Felhaber went to an El Paso branch of Bank of the West seeking to exchange about $10,000 in damaged currency.

33.    Mr. Felhaber identified himself as "Ken Motley" to the bank employee.

34.    Mr. Felhaber told the bank employee that he had been digging up a tree on his relative's property in Chihuahua, Mexico, and discovered buried money.

35.    Mr. Felhaber said that amount of the buried money was at least $2.5 million, with more still being counted.

36.    Mr. Felhaber repeatedly offered to pay the bank employee to exchange the currency.

D.  *$300 in currency exchanged in September 2005:*

37.    Also in early September 2005, Mr. Felhaber went to the First National Bank in El Paso, Texas and identified himself to a bank employee as "Ken Motley."

38.    The person who identified himself as "Ken Motley" actually was Mr. Felhaber.

39.    At the First National Bank branch, Mr. Felhaber asked the bank teller to exchange

three mutilated $100 bills, which the teller did.

40.    Later in September 2005, Mr. Felhaber returned to the same First National Bank branch and inquired of the bank employee about exchanging other $100 notes.

41.    Mr. Felhaber told the bank employee that a friend from Mexico had discovered a suitcase buried on his property containing about 20 million dollars of unfit $100 bills in an alfalfa field.

E. *Mr. Felhaber's Statements to ICE Agents*:

42.    On or about October 17, 2005, Mr. Franz Felhaber spoke with an official of the U.S. Customs and Border Protection (also called CPB in this complaint) in El Paso, Texas. Mr. Felhaber inquired as to how he could import large sums of mutilated currency.

43.    Mr. Felhaber told the CPB official that the money had been buried in a coffin and had deteriorated because the coffin was old and not properly sealed.

44.    Mr. Felhaber claimed the money belonged to his client's grandmother and had been stolen.

45.    On October 24, 2005, law enforcement agents of the U.S. Immigration and Customs Enforcement (also called ICE in this complaint) interviewed Mr. Felhaber.

46.    Mr. Felhaber told the agents that he was currently working for Francisco Javier Ramos Saenz-Pardo by helping him import large quantities of damaged currency to be exchanged for new money.

47.    Mr. Felhaber said that the mutilated currency belonged to Mr. Francisco Javier Ramos Saenz-Pardo, and that Mr. Felhaber and the Carillo-Valles's were seeking to exchange the currency on Mr. Saenz-Pardo's behalf.

-8-

48.     Mr. Felhaber also told agents that Mr. Saenz-Pardo first approached Mr. Jose Carillo-Valles and offered him 25% to get the mutilated money exchanged for good money.

49.     Mr. Felhaber said that his payment for each "load" of mutilated money that Mr. Felhaber arranged to import and exchange for Mr. Saenz-Pardo would be $5,000.

50.     Further, during the interviews with law enforcement agents, Mr. Felhaber also admitted that he, Mr. Jose Carillo-Valles, and Mrs. Esther Carillo-Valles-Saenz-Pardo already had imported $125,000 in damaged currency into the U.S. from Mexico, which belonged to Mr. Saenz-Pardo.

51.     Mr. Felhaber was referring to the $120,000 in mutilated currency exchanged at the Federal Reserve Bank in El Paso, Texas, in August 2005.

F.  *Redemption of $136,450 through BEP in January 2006*:

52.     In January 2006, BEP in Washington, D.C. received a package from Texas containing a letter dated January 3, 2006 and approximately $136,000 in mutilated U.S. currency.

53.     The return address on the package was to Jose Carillo-Valles at Mr. Franz Felhaber's business address in Texas. The letter was signed by "Jose Carillo" and gave a Mexican address.

54.     This letter stated to BEP that the enclosed "currency was stored in a basement for 22 years (approx.). After several discussions with our attorney and the Mexican government, we are submitting this currency . . . . We have submitted documents given to the Mexican and U.S. Government to comply with all laws . . . . In the future we would like to submit this money into our bank as prescribed by your web page. Due to the volume of money we are unable to ship more than $1,000,000 USD per shipment. This is due too [sic] the fact that the people employed to transport to the U.S.A. do not have more insurance to cover this money. . . . If you should have any questions

please feel free to call my attorney . . . . [name and phone omitted]."

55.     On January 4, 2006, a Currency and Monetary Instrument Report (CMIR) record for $136,000 was filed with the U.S. government in Santa Theresa, New Mexico (near El Paso, Texas). The CMIR stated that the money was imported for "Carillo, Jose Valles" and the amount of the "damaged currency" was $136,000. The CMIR is signed "Xochitl Carillo-Valles."

56.     In March 2006, BEP redeemed the mutilated currency, submitted by Mr. Carillo-Valles in January 2006, and mailed him a check in the amount of $136,450 to the return address on the package, which was Mr. Felhaber's business address in El Paso, Texas.

57.     Mr. Jose Carillo-Valles deposited the check for $136,450 from BEP into his Bank of America account.

58.     The physical characteristics and the description of the packaging of the $136,450 in mutilated currency are consistent with that of the $120,000 in mutilated currency exchanged on August 29, 2005, by the El Paso Federal Reserve Bank for Mr. Felhaber and Mr. and Mrs. Jose Carillo-Valles.

G. *Mr. Carillo-Valles's statements to ICE Agents*:

59.     On September 13, 2006, six months after BEP redeemed the $136,450 in mutilated currency, ICE agents interviewed Mr. Jose Carillo-Valles.

60.     In his statements to law enforcement officials, Mr. Carillo-Valles denied ever sending money to BEP or receiving money from BEP.

61.     When asked if he had ever made deposits or exchanged money for anyone, Mr. Carillo-Valles denied doing so.

62.     Mr. Carillo-Valles said he only deposits money into his Bank of America account.

-10-

63.    Mr. Carillo-Valles said that he opened the Bank of America account with money he received in August 2005 through an inheritance arranged by Mr. Felhaber.

64.    Mr. Carillo-Valles said that Mr. Felhaber delivered the "inheritance" to him after the money had been transported from Mexico into the U.S. through Santa Theresa, N.M., and declared to the U.S. government.

65.    Mr. Carillo-Valles further claimed that Mr. Felhaber only let him keep $10,000 of the "inheritance" because the rest went to fees for getting the "inheritance" to Mr. Carillo-Valles.

66.    On November 9, 2006, federal Immigration and Customs Enforcement (ICE) agents interviewed Mrs. Esther Carillo-Valles Saenz-Pardo.

67.    Mrs. Carillo-Valles Saenz-Pardo told the agents she knew nothing of the $136,000 in mutilated currency, which her husband supposedly had sent to BEP in January 2006.

68.    With regard to the $120,000 exchanged at the Federal Reserve Bank in El Paso in August 2005, Mrs. Carillo-Valles Saenz-Pardo said that her husband had given her the money in Juarez, Mexico, and instructed her to put the money in her purse.

69.    Mrs. Carillo-Valles Saenz-Pardo said the $120,000 came from an inheritance from her husband's father and mother.

70.    Mrs. Carillo-Valles Saenz-Pardo told law enforcement agents that her father-in-law died 14 years ago, and her mother-in-law's death was in the early part of 2006, which would have occurred after the El Paso Federal Reserve Bank branch exchanged the $120,000 in mutilated currency in August 2005.

H. *Bringing about $1.2 million in Mutilated Currency to BEP for Redemption in April 2007:*

71.    On April 6, 2007, at about 8:30 a.m., Mr. Felhaber and Ms. Xochitl Carillo-Valles

-11-

presented themselves at the BEP office in Washington, D.C., to take part in BEP's program to redeem mutilated currency.

72.    Ms. Xochitl Carrillo-Valles produced an envelope with approximately $1300 in mutilated U.S. currency, and Mr. Felhaber had with him a much larger sum of mutilated currency.

73.    Mr. Felhaber and Ms. Carrillo-Valles told BEP officials that the currency had become "mutilated" by being "buried" for a long time in another country.

74.    The total amount of mutilated currency that Ms. Carillo-Valles and Mr. Felhaber said that they had brought to BEP on April 6, 2007, was about $1.2 million.

75.    On or about April 6, 2007, Mr. Felhaber and Ms. Xochitl Carillo-Valles gave BEP officials the damaged currency.  The currency is the first of the two defendant properties in this action.

76.    Mr. Felhaber and Ms. Carrillo-Valles received a formal BEP "Receipt – Hand Deliveries of Currency" on or about April 6, 2007.

77.    The receipt document listed "Xochitl Carillo Valles" as the who had submitted the funds for redemption and stated that "$1.2 million dollars approx" had been submitted.  The couple gave the claimant's address at Mr. Felhaber's business address in El Paso, Texas.  Mr. Felhaber's name and phone number are also on the receipt.

78.    On or about April 3, 2007, a CMIR record was filed with the U.S. government at the border of Santa Theresa, N.M.

79.    This CMIR lists "Carillo, Jose Valles" as the person on whose behalf the currency was imported or exported.

80.    The handwritten name of the person making the CMIR is "Carillo, Xochitl Valles."

-12-

In the same handwriting, the CMIR describes the funds being imported as "mutilated currency" in an amount "to be determined by the Bureau of Engraving and Printing" in Washington, D.C. The signature on the CMIR is "Xochitl Carillo Valles."

81.     The physical characteristics and packaging of the $1.2 million in mutilated currency, the first defendant property, are consistent with the physical characteristics and packaging of the $136,450 that BEP redeemed in March 2006 for Mr. Carillo-Valles and the $120,000 exchanged at the El Paso Federal Reserve Bank in August 2005 for the Felhaber/Carillo-Valles family.

I. *Bringing about $5.2 million in Mutilated Currency to BEP for Redemption in April 2008:*

82.     On April 25, 2008, Ms. Xochitl Carillo-Valles and Mr. Franz Felhaber brought to BEP in Washington, D.C., a suitcase containing about $5.2 million of mutilated currency, which they wanted BEP to redeem. This is the second defendant property in this forfeiture action.

83.     Mr. Felhaber told BEP officials that the $5.2 million in currency belonged to Ms. Xochitl Carillo-Valles's brother.

84.     Mr. Felhaber told BEP officials that the currency had been buried, that it came from Mexico, and was from the same source as the earlier submitted $1.2 million, which is the first defendant property in this action.

85.     Mr. Felhaber said that he had an additional $1 million in damaged U.S. currency.

86.     No separate CMIR or other written report has been filed with the U.S. government for the importation of the $5.2 million in currency from Mexico into the U.S.

87.     The $1.2 million and the $5.2 million in "mutilated currency" are in the custody of the U.S. Treasury Department's Bureau of Engraving and Printing in Washington, D.C.

88.     The two defendant properties, plus the $136,450 in mutilated currency redeemed by

BEP in March 2006, and the $120,000 in mutilated currency exchanged on August 29, 2005, by the El Paso Federal Reserve Bank appear to be from the same source of "buried" mutilated currency.

89.    After BEP received the two defendant properties from Mr. Felhaber and Ms. Xochitl Carillo-Valles in April 2007 and April 2008, respectively, BEP officials stored separately the two quantities of mutilated currency in a vault at BEP offices in Washington, D.C.

90.    In May 2008, a U.S. Magistrate Judge of the U.S. District Court for the District of Columbia issued a warrant to seize the first defendant property, that is, one box and plastic bags containing about $1.2 million in mutilated U.S. currency in case 1:08-mj-00327-AK. Pursuant to this warrant, a federal agent seized the first defendant property on May 22, 2008. Physically, the first defendant currency remains stored separately in a BEP vault in Washington, D.C.

91.    In June 2008, a U.S. Magistrate Judge of the U.S. District Court for the District of Columbia issued a warrant to seize the second defendant property, that is, one suitcase containing about $5.2 million in mutilated U.S. currency case 1:08-mj-00378-JMF. Pursuant to this warrant, a federal agent seized the first defendant property on June 19, 2008. Physically, the second defendant currency remains stored separately in a BEP vault in Washington, D.C.

## COUNT ONE

1.    The factual statements made in paragraphs 1 through 91 are re-alleged and incorporated by reference herein.

2.    When the defendant properties were imported to a place inside the United States from a place outside the United States, the person(s) who transported the defendant properties violated 31 U.S.C. § 5316 because either no § 5316 report(s) were filed, or the report(s) filed did not contain the full, correct information required by law. Therefore, the defendant properties, two quantities of

mutilated U.S. currency, are properties involved in a violation of 31 U.S.C. § 5316, or a conspiracy to commit such violation, and property traceable to such violation or conspiracy.

3.     As such, the defendant properties are subject to forfeiture, pursuant to 31 U.S.C. § 5317(c)(2).

## COUNT TWO

1.     The factual statements made in paragraphs 1 through 91 are re-alleged and incorporated by reference herein.

2.     When the defendant properties were imported to a place inside the United States from a place outside the United States, the person(s) who transported the defendant properties violated 31 U.S.C. § 5324(c) because either the person(s) failed to file a report required by 31 U.S.C. § 5316, or the § 5316 report(s) contained material omissions or misstatements of fact.  Therefore, the defendant properties, two quantities of mutilated U.S. currency, are properties involved in a violation of 31 U.S.C. § 5324(c), or a conspiracy to commit such violation, and property traceable to such violation or conspiracy.

3.     As such, the defendant properties are subject to forfeiture, pursuant to 31 U.S.C. § 5317(c)(2).

## COUNT THREE

1.     The factual statements made in paragraphs 1 through 91 are re-alleged and incorporated by reference herein.

2.     When the defendant properties were imported to a place inside the United States from a place outside the United States, the person(s) who transported the defendant properties concealed more than $10,000 in currency in a conveyance, article of luggage, merchandise, or other container

-15-

with the intent to evade a currency reporting requirement under 31 U.S.C. § 5316, in violation of 31

U.S.C. § 5332(a), which prohibits bulk cash smuggling into or out of the Untied States. Therefore,

the defendant properties, two quantities of mutilated U.S. currency, are properties involved in a

violation of 31 U.S.C. § 5332(a), which proscribes bulk cash smuggling into or out of the United

States, or a conspiracy to commit such a violation, and property traceable to such a violation or

conspiracy.

        3.     As such, the defendant properties are subject to forfeiture, pursuant to 31 U.S.C. §

5332(c).

### COUNT FOUR

        1.     The factual statements made in paragraphs 1 through 91 are re-alleged and

incorporated by reference herein.

        2.     The defendant properties were transported, transmitted, or transferred to a place inside

the United States from or through a place outside the United States with the intent to promote the

carrying on of specified unlawful activity, including but not limited to mail fraud and/or wire fraud.

Therefore, the defendant properties, two quantities of mutilated U.S. currency, are properties

involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956(a)(2), which

proscribes the laundering of monetary instruments, or property traceable to such property, or a

conspiracy to commit such an offense.

        3.     As such, the defendant properties are subject to forfeiture, pursuant to 18 U.S.C. §

981(a)(1)(A).

### COUNT FIVE

        1.     The factual statements made in paragraphs 1 through 91 are re-alleged and

-16-

incorporated by reference herein.

2.      Since at least 2005, the Felhaber/Carillo-Valles group have acted as an unlicensed money transmitting business in violation of 18 U.S.C. § 1960 by importing mutilated currency from Mexico into the United States and seeking to exchange or redeem it on behalf of another person(s). The defendant properties, two quantities of mutilated U.S. currency, are properties involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1960, which prohibits unlicensed money transmitting businesses, or property traceable to such property.

3.      As such, the defendant properties are subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(A).

*WHEREFORE*, the plaintiff prays that, as to the above-referenced defendant properties, due process issue according to law; that, pursuant to law, notice be provided to all interested parties to appear and show cause why the forfeiture should not be decreed and the defendant properties be condemned as forfeited to the United States of America; and for such other and further relief as this Court may deem just, necessary and proper.

Respectfully submitted,

/s/ Jeffrey A. Taylor
JEFFREY TAYLOR, D.C. Bar No. 498610
UNITED STATES ATTORNEY

/s/ William R. Cowden
WILLIAM R. COWDEN, D.C. Bar No. 426301
Assistant United States Attorney

/s/ Barry Wiegand
BARRY WIEGAND, D.C. Bar No. 424288
Assistant United States Attorney

Criminal Division, Asset Forfeiture Unit
555 Fourth Street, N.W., Fourth Floor
Washington, D.C. 20530
(202) 307-0299
William.B.Wiegand@USDoJ.Gov

## **VERIFICATION**

I, Steven A. Schneider, a Special Agent of the U.S. Department of Homeland Security, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem*, which is based upon reports and information known to me and/or furnished to me by law enforcement agents, is true and correct.

Executed on this  26th  day of August, 2008.

/s/ Stephen A. Schneider
Stephen A. Schneider, Special Agent
United States Department of Homeland Security
Immigration and Customs Enforcement

-19-

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

United States of America

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _11004_
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

One Box and Plastic Bags Containing About
$1.2 Million in Mutilated U.S. Currency, et al.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
William R. Cowden
Barry Wiegand            (202) 307-0299
Assistant U.S. Attorneys
555 4th St. NW, 4th Fl.
Washington, DC 20530

Case: 1:08-cv-01476
Assigned To : Bates, John D.
Assign. Date : 8/26/2008
Description: General Civil

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ⊗ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZEN
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ☐ A. Antitrust

☐ 410 Antitrust

### ☐ B. Personal Injury/ Malpractice

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ☐ C. Administrative Agency Review

☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA ((1395ff))
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☐ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## ⊗ E. General Civil (Other)    OR    ☐ F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ⊗ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

— 0 —

| ☐ **G.** *Habeas Corpus/ 2255* | ☐ **H.** *Employment Discrimination* | ☐ **I.** *FOIA/PRIVACY ACT* | ☐ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ **K.** *Labor/ERISA (non-employment)* | ☐ **L.** *Other Civil Rights (non-employment)* | ☐ **M.** *Contract* | ☐ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.) 31 U.S.C. §5316(export/import monetary instruments), 31 U.S.C. §5331(material omissions/misstatement of fact), 31 U.S.C. §5332(a)(bulk cash smuggling into/out of U.S.), 18 U.S.C. §1956(laundering monetary instruments), and 18 U.S.C. §1960(unlicensed money transmitting businesses). The properties involved in these viols. are subject to forfeiture purs to 31 U.S.C. §5317(c)(2), 31 U.S.C. §5332(c), and 18 U.S.C. §981(a)(1)(A)

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS  ☐ ACTION UNDER F.R.C.P. 23  **DEMAND $**  Check YES only if demanded in complaint  **JURY DEMAND:** ☐ YES  ☒ NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  ☐ YES  ☒ NO  If yes, please complete related case form.

DATE **8-26-08**  SIGNATURE OF ATTORNEY OF RECORD  /s/ *Barry Wiegand*

BARRY WIEGAND, Assistant United States Attorney

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.     CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>555 Fourth St., N.W.<br>Washington, D.C. 20530 | )<br>)<br>) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ONE BOX AND PLASTIC BAGS<br>CONTAINING ABOUT $1.2 MILLION<br>IN MUTILATED U.S. CURRENCY, | )<br>)<br>) |
| | ) |
| and | ) |
| | ) |
| ONE SUITCASE CONTAINING<br>ABOUT $5.2 MILLION<br>IN MUTILATED U.S. CURRENCY, | )<br>)<br>) |
| | ) |
| Defendants. | ) |

Civil Action No.:

08 1476

## WARRANT FOR ARREST *IN REM*

TO:   THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY–
IMMIGRATION AND CUSTOMS ENFORCEMENT AND/OR ANY OTHER
DULY AUTHORIZED LAW ENFORCEMENT OFFICER:

WHEREAS a Verified Complaint for Forfeiture *In Rem* has been filed in the
United States District Court for the District of Columbia, on the 26 ᵗᴴ day of August,
2008, alleging that the defendant properties are subject to seizure and forfeiture to the
United States pursuant to 18 U.S.C. § 981(a)(1)(A);

YOU ARE, THEREFORE, HEREBY COMMANDED to serve the defendant
properties, thus bringing, within the jurisdiction of the Court, the said defendant
properties, more fully described as:

### ONE BOX AND PLASTIC BAGS CONTAINING
### ABOUT $1.2 MILLION IN MUTILATED U.S. CURRENCY,

### and

**ONE SUITCASE CONTAINING ABOUT
$5.2 MILLION IN MUTILATED U.S. CURRENCY.**

YOU ARE FURTHER COMMANDED to provide notice of this action to all persons thought to have an interest in or claim against the defendant properties by serving upon such persons a copy of this warrant and the Verified Complaint *In Rem*, in a manner consistent with the principles of service of process of an action *in rem* under the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions, and the Federal Rules of Civil Procedure.

YOU ARE FURTHER COMMANDED, promptly after execution of this process, to file the same in this Court with your return thereon, identifying the individuals upon whom copies were served and the manner employed.

Dated:    **AUG 2 6 2008**

**NANCY M. MAYER-WHITTINGTON**
Clerk of the Court

By:    *Maureen Higgins*
Deputy Clerk

-2-